Russell L. LIMP, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 981S242.

Supreme Court of Indiana.

March 2, 1982.

Steve Barber, Lockyear, Barber & Kornblum, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Dan S. LaRue, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Russell Limp, was convicted by a jury of two counts of child molesting, a class B felony. Ind.Code § 35–42–4–3 (Burns 1979 Repl.). He was sentenced to concurrent terms of fifteen years in the Indiana Department of Correction. In his direct appeal, he presents the following issues for our review:

1. Whether the trial court improperly denied defendant's motion for mistrial following a police officer's statement that "he believed the child";

2. Whether the trial court erred in instructing the jury on the credibility of witnesses;

3. Whether the trial court erred when it refused to grant defendant's motion for mistrial based on the prosecutor's comments during final argument; and

4. Whether the trial court erred in sentencing the defendant.

The record reveals defendant resided in a trailer park near Oakland City, Indiana, as did his sister-in-law, L.C., and her ten year old daughter, J. On the afternoon of December 22, 1980, L.C. went to defendant's trailer. She attempted to enter the trailer, but a chain lock restricted the door as she attempted to open it. She heard defendant yell "Get out"; she looked through the partially opened doorway and observed her daughter J. run from the bathroom. She asked J. what she and defendant were doing in the bathroom but J. refused to answer.

L.C. left, but shortly returned to defendant's trailer, where she summoned J. home. Reluctantly, J. eventually informed her that defendant had asked her to commit fellatio on him and that the sexual act had been interrupted by L.C.'s arrival at the front

door. Later, J. also informed her mother that on two prior occasions, defendant had intercourse with her. That information was substantiated by a physical examination of J. conducted by Dr. Daniel Michel at the request of Gibson County Social Services, who had acted at the initiative of L.C. These revelations prompted the charges and convictions at issue; Dr. Michel, L.C., J., and Captain George Ballard of the Gibson County Sheriff's Department, who investigated the crimes, all testified at trial.

## I.

During cross-examination of state's witness Captain Ballard, the officer responded to a defense question by stating "I believe the child or we wouldn't be here right now." Defense counsel immediately objected and requested the court strike the remark from the record; the court sustained the objection, ordered the statement stricken, and admonished the jury "not to consider the witness's response inasmuch as it's up to the jury to decide who to believe and who not to believe."

Defense counsel then moved for a mistrial on the basis the remark constituted an "evidentiary harpoon." He argued witness Ballard had been "a police officer for a number of years" who realized the remark was improper but nonetheless injected it for its colorful and prejudicial effect, thereby—and unnecessarily—placing defendant in a position of grave peril. Defense counsel argued any admonishment to the jury "could not un-ring a bell or do anything to correct the prejudice that's been caused ....." The trial court overruled defendant's motion for mistrial, again admonishing the jury to disregard Ballard's statement.

Defendant maintains the trial court erred when it refused to grant the motion for mistrial. We disagree.

In *White v. State*, (1971) 257 Ind. 64, 272 N.E.2d 312, we explained that the question whether a mistrial motion prompted by the interjection of improper evidence should be granted rests largely in the sound discretion of the trial court. There, we acknowledged

thirteen factors which bear on the trial court's ruling:

"1. The effect of constitutional provisions, statutes or rules relating to harmless error.

"2. The degree of materiality of the testimony.

"3. Other evidence of guilt.

"4. Other evidence tending to prove the same fact.

"5. Other evidence that may cure the improper testimony.

"6. Possible waiver by the injured party.

"7. Whether the statement was volunteered by the witness and whether there had been deliberate action on the part of the prosecution to present the matter to the jury.

"8. The penalty assessed.

"9. Whether or not the testimony, although volunteered by the witness, was in part brought out by action of the defendant or his counsel.

"10. The existence of other errors.

"11. Whether the question of guilt is close or clear and compelling.

"12. The standing and experience of the person giving the objectionable testimony.

"13. Whether or not the objectionable testimony or misconduct was repeated."
*Id.*, 257 Ind. at 69, 272 N.E.2d at 314–5. Both defendant and the state maintain the application of these factors supports their respective positions.

There is no indication Ballard's improper remark was precipitated by any deliberate action of the state. The remark occurred during defendant's examination of Ballard; there is no evidence the interjection of his opinion was a product of calculation, for it occurred in the context of questioning designed to impair the victim's credibility by revealing inconsistencies in her statements to police officers during their investigation. Captain Ballard's response, albeit improper, appears instinctive rather than a contrived attempt to place prejudicial matter before the jury. The record reveals Captain Ballard's remark was not repeated.

While J.C.'s testimony formed the basis of the state's case, the ten year old's testimony was corroborated by independent evidence. L.C.'s observations at defendant's trailer on December 22, 1980, coincided with the child's testimony. Dr. Michel testified J.C.'s vaginal cortis was dilated beyond that normal to ten year olds, and that the abnormalcy was attributable only to the penetration of a foreign object. The question of defendant's credibility consequently was not the sole matter upon which a determination of guilt or acquittal rested.

In the context of these various circumstances, we cannot say the trial court abused its discretion when it denied defendant's motion for mistrial. The trial court properly admonished the jury to disregard Ballard's statement. That admonishment is presumed to cure any prejudice to the defendant and, on the record presented here, defendant has not overcome the presumption and established that the remark placed him in grave peril. *Bailey v. State*, (1980) Ind., 412 N.E.2d 56; *White v. State, supra.* There was no error here.

## II.

■ Defendant maintains the trial court erred when it refused to give his tendered instruction number 3 and instead gave its instruction number 30. Both instructions concerned the rules of law which guide a jury's assessment of the credibility of a witness who has uttered prior inconsistent statements. Defendant asserts the trial court's instruction embodied incorrect statements of law, defects not present in his rejected instruction number 3.

The court's instruction number 30 reads: "The credibility of a witness may be attacked by introducing evidence that on some former occasion the witness made a statement inconsistent with his testimony in this case. It is inconsistent if the witness denied making the prior statement or if the witness could not remember making the prior statement. Evidence of this kind may be considered by you in deciding the weight to be given to the testimony of that witness as well as

substantive evidence of the guilt of the defendant."

Defendant contends the instruction was erroneous because it informed the jury that two types of inconsistent statements existed—those which the witness denies making, and those which the witness cannot remember making. He asserts the instruction indicated the jury should treat the two types of prior inconsistent statements differently and was consequently an incorrect, misleading, and confusing statement of law.

■ There is nothing in the instruction which suggested to the jury that it should accord different significance to a prior inconsistent statement denied by a witness, as opposed to one which the witness could not remember making. The instruction merely indicated that whether a witness denied or could not recall making the prior inconsistent statement, it was nonetheless a matter which bore on the credibility of a witness. Whether the distinction drawn in the instruction is necessary might be debatable; the crux of a proper instruction on the effect of a prior inconsistent statement is that it may be considered in evaluating the credibility of the witness and that when, as here, the out-of-court asserter was available for cross-examination that the statement may be viewed as substantive evidence. *Patterson v. State*, (1975) 263 Ind. 55, 324 N.E.2d 482. At most, the distinction drawn in the instruction can be characterized as harmless surplusage.

Defendant's rejected instruction number 3 embraced these same principles, although without reference to the distinction defendant has challenged. There was no error in the trial court's refusal to give defendant's instruction, the substance of which was adequately and correctly covered in the court's instruction. *Cox v. State*, (1981) Ind., 419 N.E.2d 1279.

## III.

■ Defendant contends the trial court erred when it refused to grant his motion for mistrial based on the deputy prosecutor's remarks during final argument, in which the deputy prosecutor posed the following rhetorical questions to the jury:

"What type of psychological damage has been done to this little girl because of these acts inflicted upon her? Will she ever recover from these acts? There's no way of telling, there's no way of knowing . . . ."

Defense counsel immediately objected; the trial court sustained the objection. Defense counsel then moved for a mistrial, arguing the remark had been calculated solely to inflame the jury's passions and was irrelevant to the question of defendant's guilt or innocence; he argued the remarks had placed his client in grave peril and could not be corrected absent discharge of the jury. The trial court denied the motion, but admonished the jury to disregard the prosecutor's remarks "in determining the guilt or innocence of the defendant." The court then inquired whether any juror could not disregard the remarks; based on the jurors' silence, the trial court permitted final argument to continue.

This Court recently confronted the question before us in similar factual circumstances. In *Remsen v. State,* (1981) Ind., 428 N.E.2d 241, the prosecutor had rhetorically inquired of the jurors during final argument whether "You would like to have your little daughter or little loved one of yours view a forced rape?" There, we stated:

"It is not proper to phrase final arguments in a manner calculated to inflame the passions or prejudices of the jury. *DeHority v. State,* (1939) 215 Ind. 390, 19 N.E.2d 945; *Lawson v. State,* (1976) 171 Ind.App. 163, 355 N.E.2d 274. Prosecutors bear a special responsibility to adhere to the rule. Code of Professional Responsibility, Ethical Canon 7–13." *Id.* at 245.

The remarks at issue here were improper, for the information had no bearing on defendant's guilt or innocence of the crime charged.

As in *Remsen,* however, we are compelled to conclude the trial court did not abuse its discretion in denying the motion for mistrial. The comment was an isolated instance of improper conduct; the trial court not only admonished the jury to disregard the comments, but also inquired whether any juror could not so act. In these circumstances, the improper statements of the prosecutor cannot be said to have had such persuasive effect that a new trial is warranted. *Remsen v. State, supra; Craig v. State,* (1977) 267 Ind. 359, 370 N.E.2d 880; *Woodard v. State,* (1977) 267 Ind. 19, 366 N.E.2d 1160.

## IV.

■ Defendant's final contention is that the trial court erred in sentencing him to concurrent terms of fifteen years. He argues the evidence does not reveal aggravating circumstances to justify the imposition of enhanced sentences, that mitigating circumstances outweighed the aggravating circumstances, and that the trial court had failed to state its reasons for enhancing the sentences with sufficient particularity to permit intelligent review.

With this latter contention we agree. In *Page v. State,* (1981) Ind., 424 N.E.2d 1021, and *Green v. State,* (1981) Ind., 424 N.E.2d 1014, both decided subsequent to the sentencing in this cause, this Court stressed that the enhancement of a basic statutory sentence must be accompanied by a recital of the court's reasons, stated with particularity and peculiar to the defendant and evidence before it. Here, the trial court stated:

"Court further finds that the aggravating circumstances outweigh the mitigating circumstances, as follows:

" # 1.  The nature of the crime.
 # 2.  The repetitiveness of the crime.
 # 3.  The age of the defendant."

We will not reach the merits of defendant's challenge to the propriety of these reasons for, at best, the statement constitutes a simple recital of statutory factors enumerated in Ind.Code § 35–4.1–4–7 (Burns 1979 Repl.), which governs sentencing. We expressly rejected such a summary approach in *Green* and *Page.* The cause must be remanded to the trial court with the directive that the court state its reasons for enhancing the basic sentences of ten years

or, alternatively, that the court resentence defendant to the basic terms.

For all the foregoing reasons, defendant's convictions are affirmed; the cause is remanded in order that the trial court comply with this Court's instructions regarding defendant's sentencing.

Cause remanded for further proceedings not inconsistent with this opinion.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.